ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**

| | | |
|---|---|---|
| **LUNA COMMERCIAL II, LLC**<br>DEMANDANTE(S)-APELADA(S)<br><br><br>V.<br><br><br>**LUIS VALDESUSO GARCÍA**<br>**ET. ALS.**<br>DEMANDADA(S)-APELANTE(S) | **KLAN202300215** | ***Apelación***<br>procedente del Tribunal de Primera Instancia, Sala Superior de **SAN JUAN**<br><br>Caso Núm.<br>**K CD2015-2167 (908)**<br><br><br>Sobre:<br>Ejecución de Hipoteca |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Juez Barresi Ramos y la Jueza Rivera Pérez.

*Barresi Ramos*, juez ponente

### S E N T E N C I A

En San Juan, Puerto Rico, hoy día 28 de noviembre de 2023.

Comparecen ante nos, los señores **LUIS VALDESUSO GARCÍA**, **SARA GARCÍA ROMERO** y la Sociedad de Bienes Gananciales compuesta por ambos (señores **VALDESUSO-GARCÍA**) mediante *Apelación* incoada el 13 de marzo de 2023. En su escrito, nos solicitan que revisemos la *Sentencia* dictada el 6 de diciembre de 2022 por el Tribunal de Primera Instancia (TPI), Sala Superior de San Juan.[1] Mediante dicho dictamen, entre otras cosas, se declaró *ha lugar* la *Solicitud de Sentencia Sumaria Parcial* presentada el 15 de diciembre de 2017 por **Condado 3 LLC** (**Condado 3**).

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

– I –

El día 8 de octubre de 2015, el Banco Popular de Puerto Rico (BPPR) entabló *Demanda* sobre cobro de dinero y ejecución de hipoteca contra los

---

[1] Esta determinación judicial fue notificada y archivada en autos el 16 de diciembre de 2022. Véase Apéndice de la *Apelación,* págs. 83- 96.

Número Identificador:
SEN2023_____

señores **Valdesuso-García**.[2] El BPPR alegó que los señores **Valdesuso-García** mantenían una serie de deudas por el quebrantamiento de sus obligaciones. En resumen, sostuvo que el 28 de noviembre de 2003, el antiguo Doral Bank confirió el préstamo número 85000821 por la cantidad de $487,500.00 a favor de los señores **Valdesuso-García**, el cual fue garantizado con un Pagaré Hipotecario (Pagaré) por la suma mencionada a favor de dicha institución bancaria. A la fecha de la *Demanda*, BPPR aseguró ser el tenedor de buena fe del Pagaré. Posteriormente, el 24 de abril de 2006, el 21 de marzo de 2007 y el 20 de agosto de 2008, el BPPR concedió otros préstamos a los señores **Valdesuso-García** por las cuantías de $250,000.00, $150,000.00 y $75,000.00, respectivamente. El BPPR adujo que los señores **Valdesuso-García** habían incumplido con las cláusulas de los préstamos y las garantías conferidas. A esos efectos, expresó que aceleró las deudas en su totalidad y declaró las mismas vencidas, líquidas y exigibles. En consecuencia, el BPPR solicitó que se condenara a los señores **Valdesuso-García** al pago de las cantidades adeudadas y, en caso de que no se cumpliese con lo ordenado ante una sentencia final y firme, se ordenara la ejecución de las garantías hipotecarias.

El 10 de febrero de 2016, los señores **Valdesuso-García** presentaron su *Contestación a la Demanda* conteniendo sus defensas afirmativas y formularon una *Reconvención*.[3] En esencia, aceptaron el incumplimiento concerniente a los préstamos concedidos los días 24 de abril de 2006 y 21 de marzo de 2007; negaron haber eludido su obligación relativa al préstamo concedido el 20 de agosto de 2008 por falta de información suficiente y, de igual forma, negaron haber contravenido su compromiso para con el préstamo concedido por Doral Bank. Sobre este último, sostuvieron que ello se debía "[al] resultado de actuaciones torticeras, maliciosas, dolosas e intencionales de Doral Bank con el propósito de acelerar la deuda en su

[2] Apéndice de la *Apelación,* págs. 1- 6.
[3] *Íd.,* págs. 7-10.

totalidad y declarar la misma vencida, líquida y exigible." Como defensas afirmativas, los señores **VALDESUSO-GARCÍA** levantaron prescripción y cosa juzgada.

Por otro lado, en su *Reconvención*, los señores **VALDESUSO-GARCÍA** esgrimieron que Doral Bank había instado cinco (5) reclamaciones judiciales alegando el impago cuando los plazos mensuales estaban al día al momento en que se presentaron las demandas. Aseveraron que las actuaciones de Doral Bank eran culposas, dolosas, intencionales y maliciosas, así como le habían causado sufrimientos y angustias.[4]

Posteriormente, el 30 de junio de 2016, el BPPR y **Condado 3** suscribieron un acuerdo sobre la transferencia de todos los intereses y derechos como acreedor del préstamo concedido por Doral Bank a los señores **VALDESUSO-GARCÍA**. En atención a ello, el 14 de septiembre de 2016, **Condado 3** presentó *Moción para Sustituir y Acumular Parte Demandante en Cuanto al Préstamo 8500821* aduciendo ser la verdadera parte con interés en continuar con dicha causa de acción.[5] El 12 de octubre de 2016, el tribunal de instancia autorizó la sustitución de parte.[6]

El 27 de septiembre de 2016, los señores **VALDESUSO-GARCÍA** presentaron una *Moción para que se Ordene a Condado 3, LLC Informar la Cantidad Pagada, Intereses Devengados y Honorarios Incurridos por el Crédito Litigioso Adquirido en este Caso*. A grandes rasgos, arguyeron que era necesario ordenar a **Condado 3** que informase la cuantía que pagó por el crédito, "para poder ejercer el derecho a retracto establecido en el Artículo 1425 del Código Civil."[7] El 23 de noviembre de 2016, el foro primario emitió

---

[4] El 18 de abril de 2018, el BPPR presentó *Moción de Desestimación de la Reconvención*. Así las cosas, el 19 de agosto de 2019, el foro primario mediante *Sentencia Parcial* desestimó, con perjuicio, la *Reconvención*. Véase Apéndice de la *Oposición a Escrito de Apelación*, págs. 9-16 y 20-21.

[5] Apéndice de la *Apelación*, págs. 11-16.

[6] La *Orden* que autoriza la referida acumulación de parte no surge del expediente ante nuestra consideración. Tomamos conocimiento judicial mediante el sistema de Consulta de Casos del Portal del Poder Judicial.

[7] Apéndice de la *Oposición a Escrito de Apelación*, pág. 25.

una *Resolución* en la cual declaró *no ha lugar* esta solicitud y precisó que el plazo para ejercer el derecho de retracto había caducado.[8]

Tras varios incidentes procesales que no reseñaremos, el 15 de diciembre de 2017, **Condado 3** presentó una *Solicitud de Sentencia Sumaria Parcial*.[9] En dicha petición, intimó ser el tenedor del pagaré con derecho para exigir el cumplimiento, y sostuvo que la deuda estaba vencida, líquida y exigible. Por ello, indicó que procedía la sentencia sumaria a su favor. Para sustentar su solicitud, **Condado 3** enumeró los siguientes hechos como incontrovertidos:

1. Los Valdesuso-García, suscribieron y emitieron un pagaré hipotecario a favor [de] Doral Bank, o a su orden, el día 28 de noviembre de 2003, por la suma de $487,050.00 de principal, más intereses a razón de 6.5% anual, más honorarios de abogados pactados en 10% del principal del Pagaré.

2. Los Valdesuso-García constituyeron primera hipoteca en garantía del pagaré descrito en el párrafo anterior sobre la siguiente propiedad inmueble:
URBANA: Finca o solar radicado en el Barrio Sabana Llana del término municipal de Río Piedras que mide 18.55 metros de frente por 34.00 metros de fondo, o sea, 630.70 metros cuadrados; en linda *sic* por el Este, o sea, el fondo, con la señora viuda de Aybar, viuda de Andrés Acosta, antes, hoy José A. Aybar, por el Sur, que es la derecha entrando, con el resto del terreno principal que contiene una casa, o sea, Pedro Orcasitas Muñoz, hoy José Piñero Díaz y Juana R. viuda de Cerame, por el Norte, con el solar de la finca de la Sociedad Protectora de los Niños, hoy Margarita Pagán; y por el Oeste, con la Avenida Jones.
Dicho Solar contiene un edificio construido de cemento techado, hoy de concreto, que mide 14.00 metros de frente por 26.19 metros de fondo; y contiene anexo dicho solar un garaje de 4.50 metros de fondo por 3.50 metros de frente, más un cuchillo anexo dedicado a caseta de limpieza de inodoro que mide 3.25 metros de fondo por 5.40 metros de frente. El patio está cementado y el edificio cercado con una tapia de concreto. Contiene además una caseta de madera y techo de zinc de 14' pies de frente por 6' de fondo con tanque de concreto con anexo sobre el edificio de concreto y un alero de madera y zinc de 14 x 8 pies. Se han construido en su totalidad las edificaciones expresadas y ha nacido a la vida registral un edificio de 3 plantas, identificado con el #1071 de la Calle William Jones, conteniendo la primera planta, un local comercial de 3,000.00 pies cuadrados y un área de estacionamiento de 1,400.00 pies cuadrados; la segunda planta contiene 6 apartamentos residenciales, con un área de 4,420.00 pies cuadrados; y la tercera planta

---

[8] *Íd.*, págs. 22- 27.
[9] Apéndice de la *Apelación*, págs. 17- 68.

contiene 6 apartamentos más residenciales, con su área es igualmente a 4,420 pies cuadrados y hacen constar que el referido edificio, para fines registrales tiene un valor de $80,000.00.

Finca 31,774 inscrita al folio 161 del tomo 1108 de Río Piedras Norte, Registro de la Propiedad de San Juan, Sección II.

3. La Hipoteca fue constituida mediante la Escritura Número 207, otorgada el día 28 de noviembre de 2003 ante la Notario Teresa González Ferrer.

4. La hipoteca relacionada en el párrafo 2 está debidamente inscrita en el Registro de la Propiedad.

5. Los Valdesuso-García incumplieron sus obligaciones asumidas en el préstamo 259130120 al dejar de realizar los pagos mensuales.

6. Conforme al Pagaré y Escritura de Hipoteca, Condado 3 *sic*, el incumplimiento de los Valdesuso-García permite acelerar el vencimiento del balance insoluto del préstamo y proceder con su cobro.

7. Los Valdesuso-García, adeudan a Condado 3 la cantidad de $202,373.44 de principal, más intereses que al 6 de diciembre de 2017 ascienden a $81,900.47, los cuales se continuarán acumulando, según pactado, hasta el pago total de la deuda y los que se continúen acumulando diariamente según pactado a razón de $36.54 al día ("per diem"); más la cantidad de $104.00 en concepto de seguro de la propiedad ("Force Place Insurance"); más la cantidad de $48,705.00 pactada para cubrir costas, gastos y honorarios de abogados en el pagaré anteriormente relacionado, para un total adeudado de $333,082.91 al 6 de diciembre de 2017.

8. Al presente, los Valdesuso-García no han pagado el balance adeudado.

9. Condado 3 es la persona jurídica con derecho a exigir el cumplimiento del Pagaré porque es el tenedor del mismo.

Ante ello, el 20 de diciembre de 2017, el tribunal *a quo* intimó *Orden* en la cual concedió un plazo de treinta (30) a los señores **VALDESUSO-GARCÍA** para exponer su posición.[10] Transcurridos ochenta y tres (83) días, el 21 de marzo de 218, **Condado 3** presentó *Moción para que se Dé por Sometida Sin Oposición la "Solicitud de Sentencia Sumaria Parcial".*[11] El 5 de abril de 2018, el foro primario declaró ha lugar la solicitud, y dispuso: "*Se tiene por sometida [la] Moción de Sentencia Sumaria sin Oposición*".[12]

---

[10] Apéndice de la *Oposición a Escrito de Apelación*, págs. 3- 4.
[11] *Íd.*, págs. 5- 6.
[12] Esta *Orden* fue notificada y archivada en autos el 9 de abril de 2018. *Íd.*, págs. 7- 8.

No obstante, lo anterior, el 6 de junio de 2019, los señores **VALDESUSO-GARCÍA** presentaron *Moción Asumiendo Representación Profesional de los Demandados y en Solicitud de Prórroga para Someter Oposición a Mociones Dispositivas*.[13] En lo pertinente, pidieron una prórroga de cuarenta y cinco (45) días para oponerse a las mociones dispositivas del expediente, las cuales incluían la solicitud de sentencia sumaria presentada por **Condado 3**. El 13 de junio de 2019, el tribunal de instancia concedió una prórroga de treinta (30) días.[14]

Así las cosas, el 23 de julio de 2019, los señores **VALDESUSO-GARCÍA** presentaron su *Oposición a Solicitud de Sentencia Sumaria Parcial*.[15] Argumentaron que existían hechos materiales en controversia, a saber: (1) si **Condado 3** tenía legitimación activa para la reclamación que pretendía y, (2) el importe que se reclamaba. Sobre la legitimación activa, sostuvieron que la solicitud de sentencia sumaria contenía una "alegada copia del pagaré objeto de la obligación reclamada", y ello no era suficiente para comprobar que tenía legitimación activa.[16] En cuanto a la controversia sobre la cuantía reclamada, los señores **VALDESUSO-GARCÍA** insistieron en que tenían derecho a extinguir la deuda puesto que se trataba de un crédito litigioso cedido, a tenor con el Artículo 1425 del Código Civil. Estos reconocieron que ya el tribunal se había expresado sobre el asunto.[17]

El 19 de agosto de 2019, atendidos y evaluados los escritos, el foro primario pronunció *Orden* en la cual dispuso, entre otros, lo siguiente:[18]

> En cuanto a la defensa al amparo del Artículo 1425 del Código Civil, [v]éase nuestra Resolución de 23 de noviembre de 2016 y lo resuelto por el Tribunal Supremo en *DLJ Mortgage v. Santiago Martínez*, 2019 TSPR 129.

> Sobre la legitimación activa, parte demandante acredítela en los próximos 10 días.

---

[13] Apéndice de la *Oposición a Escrito de Apelación*, págs. 17- 18.
[14] *Íd.*, pág. 19.
[15] Apéndice de la *Apelación*, págs. 69- 79.
[16] *Íd.*, pág. 74.
[17] *Íd.*, pág. 70.
[18] Apéndice de la *Oposición a Escrito de Apelación*, págs. 28- 29

En cumplimiento con lo requerido, el 26 de septiembre de 2019, **Condado 3** presentó su *Moción Informativa* acompañada de copia del pagaré endosado a su favor.[19]

Entonces, el 25 de octubre de 2019, los señores **VALDESUSO-GARCÍA** presentaron una *Moción para Informar Resultado de Inspección del Pagaré [...].*[20] Expusieron que, como parte del descubrimiento de prueba, el 6 de agosto de 2019, examinaron el original del Pagaré en las oficinas de **Condado 3** y se desprendía que el mismo había sido "modificado, alterado, escrito o añadido".[21] Sustentaron que contrario a la copia que **Condado 3** había presentado ante el tribunal, se había completado en maquinilla las palabras 'Western Bank' en uno de los espacios para endoso.[22]

Más tarde, el 8 de febrero de 2022, **Condado 3** presentó *Moción para Sustituir Parte Demandante.*[23] Adujo que **LUNA COMMERCIAL II LLC (LUNA COMMERCIAL)** había adquirido el préstamo objeto de la controversia, por lo que era la tenedora por endoso y de buena fe del Pagaré. Consecuentemente, interpeló la sustitución de parte al amparo de la Regla 22.3 de las de Procedimiento Civil de 2009. El 11 de febrero de 2022, el tribunal apelado dictaminó *Orden* declarando *ha lugar* la antedicha solicitud.[24]

Ulteriormente, el 16 de diciembre de 2022, se decretó la *Sentencia* apelada. El referido dictamen contiene siete (7) determinaciones de hechos, a saber:

1. El 28 de noviembre de 2003, los demandados suscribieron y emitieron un pagaré hipotecario a favor de Doral Bank por la suma de $487,050.00 de principal, más intereses a razón de 6.5% anual, más los honorarios de abogados pactados en 10% del principal del pagaré.

2. Los demandados constituyeron la hipoteca en garantía del pagaré sobre la finca 31,774, inscrita al folio 161, tomo 1108 de Río Piedras Norte, Registro de la Propiedad de San Juan, Sección II.

---

[19] Apéndice de la *Oposición a Escrito de Apelación*, págs. 30- 34. Es menester señalar que el mismo documento acompañó la *Solicitud de Sentencia Sumaria Parcial* en sus anejos 24- 27.
[20] Apéndice de la *Apelación*, págs. 80- 82.
[21] *Íd.*, pág. 80.
[22] *Íd.*
[23] Apéndice de la *Oposición a Escrito de Apelación,* págs. 36- 43.
[24] *Íd.*, pág. 44.

3. La hipoteca fue constituida mediante la Escritura Número 207 otorgada el 28 de noviembre de 2003 ante la Notaria Teresa González Ferrer y consta inscrita en el Registro de la Propiedad.

4. El 30 de abril de 2010, el Banco Popular adquirió por endoso y de buena fe el pagaré hipotecario perteneciente a Doral Bank.

5. El 30 de junio de 2016, Condado 3 adquirió por endoso y de buena fe el pagaré hipotecario.

6. Posteriormente, Luna Commercial adquirió el pagaré, de parte de Condado 3, por medio de endoso y de buena fe.

7. Los demandados incumplieron sus obligaciones asumidas bajo el pagaré al dejar de realizar los pagos mensuales adeudados.

Inconformes con el dictamen, el 3 de enero de 2023, los señores VALDESUSO-GARCÍA presentaron *Moción de Reconsideración* solicitando que se dejase sin efecto la *Sentencia* por alegada prescripción o, en la alternativa, se desestimara la causa de acción hasta que se concluyera el descubrimiento de prueba.[25] En esencia, sostuvieron que:(1) no se les notificó la sustitución de parte, ni la moción en cumplimiento de orden presentada el 5 de mayo de 2022 por LUNA COMMERCIAL; (2) el pagaré fue "alterado/manipulado y posiblemente falsificado"[26]; (3) el descubrimiento de prueba no había concluido, por lo que la sentencia era prematura; (4) existía controversia en la cantidad adeudada y, (5) la deuda estaba prescrita.

El 10 de enero de 2023, el foro de instancia dictó *Orden* concediendo un término de quince (15) días para replicar.[27] El 26 de enero de 2023, LUNA COMMERCIAL presentó *Moción en Cumplimiento de Orden* oponiéndose a la solicitud de reconsideración.[28] En apretada síntesis, adujo que: (1) la *Oposición a Solicitud de Sentencia Sumaria Parcial* presentada por los señores VALDESUSO-GARCÍA incumplía con los requisitos de la Regla 36.3 de las de Procedimiento Civil de 2009; (2) no se había presentado evidencia que sustentara que existiera una real controversia de hechos y, (3) tampoco se

---

[25] Apéndice de la *Apelación*, págs. 97- 100.
[26] *Íd.*, pág. 97.
[27] Véase Apéndice de la *Oposición a Escrito de Apelación*, pág. 55.
[28] Apéndice de la *Apelación*, págs. 101- 114.

controvirtieron los hechos por medio de la solicitud de reconsideración. A los pocos días, el 30 de enero de 2023, los señores **VALDESUSO-GARCÍA** presentaron su *Oposición a la Moción en Cumplimiento de Orden*.[29] Allí, reprodujeron algunos de los planteamientos esbozados en su *Moción de Reconsideración* y, entre otros asuntos, alegaron por primera vez que el foro de instancia carecía de jurisdicción para emitir la *Sentencia* apelada, toda vez que **Condado 3** no prestó la fianza de no residente, según lo exige la Regla 69.5 de las de Procedimiento Civil de 2009. El 6 de febrero de 2023, el foro apelado decretó *Resolución* declarando *no ha lugar* la solicitud de reconsideración presentada por los señores **VALDESUSO-GARCÍA**.[30]

Aún insatisfechos, el 13 de marzo de 2023, los señores **VALDESUSO-GARCÍA** instaron un escrito de *Apelación* ante este Tribunal de Apelaciones. En su recurso, señalan el(los) siguiente(s) error(es):

> **PRIMER ERROR**: Erró el TPI al arrogarse jurisdicción para entender en la controversia en ausencia de la prestación de fianza de no residente exigida por la Regla 69.5 de Procedimiento Civil y la jurisprudencia normativa.

> **SEGUNDO ERROR**: Erró el TPI al declarar con lugar la solicitud de sentencia sumaria de la demandante-apelada al existir hechos materiales en controversia.

> **TERCER ERROR**: Err[ó] el TPI al dictar sentencia sumaria contra la demandada-apelante al no permitir el descubrimiento de prueba, violentando así el debido proceso de ley.

El 16 de marzo de 2023, decretamos *Resolución* en la cual concedimos un plazo de treinta (30) días a **LUNA COMMERCIAL** para presentar alegato en oposición. El 17 de abril de 2023, **LUNA COMMERCIAL** presentó su *Oposición a Escrito de Apelación*.

Evaluado concienzudamente el expediente del caso y contando con el beneficio de la comparecencia de ambas partes, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a la(s) controversia(s) planteada(s).

---

[29] Apéndice de la *Apelación*, pág. 115-117.
[30] *Íd.*, pág. 118- 120.

- II –

– A –

La *sentencia sumaria* es un mecanismo procesal extraordinario que tiene el propósito de facilitar una solución justa, rápida y económica de aquellos litigios civiles que no presentan controversias genuinas de hechos materiales.[31] En estos casos, se prescinde de la celebración de una audiencia en su fondo, ya que los documentos no controvertidos que acompañan la moción de *sentencia sumaria* sirven para demostrar, efectivamente, la inexistencia de una controversia real sobre hechos materiales, por lo que solo resta aplicar el derecho.[32]

El mecanismo se encuentra instituido en la Regla 36 de las de Procedimiento Civil de 2009.[33] Las Reglas 36.1 y 36.2 de las de Procedimiento Civil de 2009, disponen que cualquiera de las partes puede presentar "una moción fundamentada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación solicitada".[34] En cualquier caso, "la parte que promueve la *sentencia sumaria* debe establecer su derecho con claridad y demostrar que no existe controversia sustancial sobre algún hecho material".[35] Ello se debe a que el mecanismo de *sentencia sumaria* solo está disponible para la disposición de aquellos casos que son claros, cuando el tribunal tenga ante sí la verdad sobre todos los hechos pertinentes.[36] Un hecho material "es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable.[37]

Para demostrar de manera efectiva la ausencia de controversia sobre los hechos materiales, la parte promovente viene obligada a desglosar estos

---

[31] *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013).
[32] *Serrano Picón v. Multinational Life Insurance Company*, 2023 TSPR 118.
[33] 32 LPRA Ap. V, R. 36.
[34] 32 LPRA Ap. V, R. 36.1 y 36.2.
[35] *Oriental Bank v. Caballero García*, 2023 TSPR 103.
[36] *Torres Pagán et al. v. Mun. de Ponce*, 191 DPR 583, 598 (2014).
[37] *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 299 (2012).

hechos en párrafos debidamente numerados y, para cada uno de ellos, debe especificar la página o el párrafo de la declaración jurada u otra prueba admisible en evidencia que lo apoya.[38] Por su parte, quien se opone a que se dicte sentencia sumariamente debe controvertir la prueba presentada por la parte que la solicita con evidencia sustancial.[39] Para ello debe cumplir con los mismos requisitos con que tiene que cumplir la parte promovente, pero, además, su solicitud debe contener:

> [U]na relación concisa y organizada, con una referencia a los párrafos enumerados por la parte promovente, de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen los mismos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal.[40]

De no hacerlo, la parte opositora corre el riesgo de que la solicitud de *sentencia sumaria* sea acogida por el tribunal y se resuelva en su contra.[41] "Como regla general, para derrotar una solicitud de sentencia sumaria la parte opositora debe presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente".[42] Esta parte no puede descansar en meras alegaciones, sino que viene obligada a contestar en forma tan detallada y específica como lo haya hecho la parte promovente.[43] Entre la evidencia que puede presentar, están las siguientes: "certificaciones, documentos públicos, admisiones de la parte contraria, deposiciones, contestaciones a interrogatorios, declaraciones juradas o affidávits, y hasta prueba oral".[44]

Al evaluar la procedencia de la solicitud de *sentencia sumaria*, el foro

---

[38] Regla 36.3(a) de las de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36.3(a); *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 432.
[39] *Birriel Colón v. Supermercado Los Colobos*, 2023 TSPR 120 (2023); *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 336 (2021).
[40] Regla 36.3(b)(1) de las de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36.3(b)(1).
[41] *Ramos Pérez v. Univisión*, 178 DPR 200, 215 (2010).
[42] *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 677 (2018); *S.L.G. Szendrey-Ramos v. Consejo de Titulares*, 184 DPR 133, 168 (2011); *Corp. of the Presiding Bishop CJC of LDS v. Purcell*, 117 DPR 714, 721 (1986).
[43] Regla 36.3(c) de las de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36.3(c).
[44] *Acevedo y otros v. Dpto. Hacienda*, 2023 TSPR 80, 212 DPR ___ (2023), citando a R. Hernández Colón, *Práctica jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta ed., San Juan, LexisNexis, 2017, pág. 318. Véase, además, Regla 36.5 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.5.

sentenciador analizará los documentos que acompañan la moción de *sentencia sumaria*, los documentos incluidos con la moción en oposición y aquellos que obren en el expediente del tribunal.[45] "Toda inferencia que se haga a base de los hechos y documentos que obren en los autos, debe tomarse desde el punto de vista más favorable al que se opone a la solicitud de sentencia sumaria".[46] Como parte de este análisis, el tribunal **no** tiene que considerar los hechos que no estén debidamente enumerados y no hagan referencia a los párrafos o páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establezcan.[47] Tampoco tiene la obligación de considerar cualquier parte de una declaración jurada o de otra prueba admisible en evidencia a la cual no se haya hecho referencia en la relación de hechos.[48]

No obstante, será el análisis del derecho aplicable y de la existencia de alguna controversia sustancial de hechos materiales lo que determinará si procede dictar sumariamente, y no el que la parte contraria deje de oponerse a la solicitud, o lo haga defectuosamente.[49] Ello, pues incluso la falta de oposición a la moción de *sentencia sumaria* no conlleva la concesión automática del remedio solicitado, si existe una controversia legítima sobre un hecho material, o si la sentencia no procede conforme al derecho sustantivo aplicable.[50]

Por último, es preciso subrayar que toda duda, por leve que sea, en cuanto a la existencia de una controversia real sobre algún hecho material es suficiente para resolver en contra de la parte que solicita que se dicte sentencia sumariamente.[51]

"[N]o es aconsejable utilizar la moción de sentencia sumaria en casos

---

[45] *PFZ Properties, Inc. v. Gen. Acc. Ins. Co.,* 136 DPR 881, 913 (1994).
[46] *E.L.A. v. Cole,* 164 DPR 608, 626 (2005); *Mgmt. Adm. Servs. Corp. v. E.L.A.,* 152 DPR 599, 610-611 (2000).
[47] Regla 36.3(d) de las de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36.3(d). Véase, además, *SLG Zapata-Rivera v. J.F. Montalvo,* supra, pág. 433.
[48] *Íd.*
[49] *Ortiz v. Holsum,* 190 DPR 511, 525 (2014).
[50] *Ortiz v. Holsum, supra*; *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 137 (2015) (Estrella Martínez, opinión disidente).
[51] *Vera v. Dr. Bravo,* 161 DPR 308, 334 (2004).

en donde existe controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor de la credibilidad es esencial y está en disputa".[52] Empero, "la regla no excluye tipos de casos y realmente puede funcionar en cualquier contexto sustantivo".[53]

A modo de sinopsis, al dictar *sentencia sumaria* el tribunal deberá:

> (1) analizar los documentos que acompañan la solicitud de sentencia sumaria y los que se incluyen con la moción en oposición, así como aquellos que obren en el expediente del tribunal; (2) determinar si el oponente de la moción controvirtió algún hecho material y esencial, o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. Analizados estos criterios, el tribunal no dictará sentencia sumaria cuando: (1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja de los propios documentos que acompañan la moción una controversia real sobre algún hecho material y esencial, o (4) como cuestión de derecho, no procede.[54]

Por otro lado, la Regla 36.4 de las de Procedimiento Civil de 2009, delimita las instancias en que el Tribunal de Primera Instancia está obligado a consignar en su dictamen los hechos materiales sobre los cuales no hay controversia, y cuáles hechos materiales halló controvertidos; a saber: (1) cuando no se dicta *sentencia sumaria* sobre la totalidad del pleito; (2) cuando no se concede todo el remedio solicitado; y (3) cuando se deniega la moción de *sentencia sumaria*.[55] Estas tres (3) instancias conllevan la celebración de una audiencia en su fondo. En estos casos, la consignación en la *sentencia sumaria* de los hechos materiales sobre los cuales no hay controversia sustancial hace innecesario presentar evidencia o prueba sobre estos durante el juicio.[56]

– **B** –

Este Tribunal de Apelaciones se encuentra en la misma posición que el Tribunal de Primera Instancia al momento de revisar denegatorias o

---

[52] *Ramos Pérez v. Univisión, supra*, pág. 219.

[53] *Rodríguez García v. UCA*, 200 DPR 929, 941 (2018); *Ramos Pérez v. Univisión, supra*, pág. 220.

[54] *Sucn. Maldonado v. Sucn. Maldonado*, 166 DPR 154, 185 (2005); *Vera v. Dr. Bravo, supra*, págs. 333-334.

[55] 32 LPRA Ap. V, R. 36.4. *Pérez Vargas v. Office Depot*, 203 DPR 687, 697 (2019).

[56] *Íd.*

concesiones de mociones de *sentencia sumaria*.[57] Esto significa que, al evaluar la solicitud de *sentencia sumaria*, al igual que el foro primario, debemos aplicar los criterios de la Regla 36 de las de Procedimiento Civil de 2009, *supra,* y su jurisprudencia interpretativa.[58] Esto supone examinar el expediente de la manera más favorable hacia la parte que se opuso a la solicitud de *sentencia sumaria*, llevando a cabo todas las inferencias permisibles a su favor.[59] Por la misma razón, tenemos el deber de revisar que tanto la moción de *sentencia sumaria* como su oposición cumplan con los requisitos de forma codificados en la Regla 36 de las de Procedimiento Civil.[60]

Si el foro primario *acogió* la moción y dictó sentencia sumariamente, nos corresponderá revisar que efectivamente no existan hechos materiales en controversia.[61] De no haberlos, procederemos entonces a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho.[62] Por el contrario, si el foro de primera instancia *denegó* la moción de *sentencia sumaria* por entender que existían hechos materiales en controversia, "el tribunal apelativo solo revisa si el foro primario abusó de su discreción".[63]

– C –

En ciertas instancias, nuestro ordenamiento jurídico exige la prestación de una fianza como mecanismo de garantía. En lo pertinente al caso de marras, la Regla 69.5 de las Reglas de Procedimiento Civil de 2009 esboza lo referente a la fianza de no residente.[64] El propósito principal de la antedicha Regla es garantizar las costas, los gastos y honorarios de abogados en pleitos en los que la parte reclamante es una corporación extranjera o una persona natural no residente.[65] Además, la Regla 69.5, *supra*, persigue

---

[57] *Birriel Colón v. Supermercado Los Colobos*, supra; *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 118 (2015).
[58] *Rosado Reyes v. Global Healthcare Group, LLC*, 205 DPR 796, 809 (2020); *Meléndez González et al. v. M. Cuebas,* supra, pág. 118.
[59] *Birriel Colón v. Supermercado Los Colobos*, supra; *Rosado Reyes v. Global Healthcare*, 205 DPR 796, 809 (2020); *Meléndez González et al. v. M. Cuebas,* supra.
[60] *Meléndez González et al. v. M. Cuebas,* supra.
[61] *Íd.*
[62] *Íd.*, pág. 119. Véase, además, *Oriental Bank v. Caballero García*, 2023 TSPR 103.
[63] *Meléndez González et al. v. M. Cuebas,* supra, pág. 116.
[64] 32 LPRA Ap. V., R. 69.5.
[65] *Yero Vicente v. Nimay Auto*, 205 DPR 126, 130 (2020); *Vaillant v. Santander*, 147 DPR 338, 345 (1998).

desalentar los litigios frívolos y sin méritos.[66] A esos fines, la aludida Regla dispone lo siguiente:

> Cuando la parte reclamante resida fuera de Puerto Rico o sea una corporación extranjera, el tribunal requerirá que preste fianza para garantizar las costas, los gastos y los honorarios de abogados a que pueda ser condenada. Todo procedimiento en el pleito se suspenderá hasta que se preste la fianza, que no será menor de mil (1,000) dólares. El tribunal podrá ordenar que se preste una fianza adicional si se demuestra que la fianza original no es garantía suficiente, y los procedimientos en el pleito se suspenderán hasta que se preste dicha fianza adicional.
> Transcurridos sesenta (60) días desde la notificación de la orden del tribunal para la prestación de la fianza o de la fianza adicional sin que ésta haya sido prestada, el tribunal ordenará la desestimación del pleito.
> *[ . . . ]*

– **D** –

La parte promovente de una acción judicial sobre cobro de dinero, debe probar que existe una deuda válida, que no se ha pagado, es acreedora de la misma y, la persona o entidad demandada es su deudora.[67] Adicionalmente, debe demostrar que la deuda que reclama es líquida, vencida y exigible.[68] Una deuda se considera líquida cuando la cuantía de dinero debida es cierta y determinada.[69] Por otro lado, se considera que la deuda es exigible cuando está vencida y, por consiguiente, puede demandarse el cumplimiento de la misma.[70]

– **E**–

La *Ley de Transacciones Comerciales* recoge en su capítulo segundo, todo lo relacionado a la reglamentación a los depósitos y cobros bancarios, las transferencias de fondos y los instrumentos negociables.[71] En lo que concierne al presente caso, la sección 2.102 de la antedicha ley define instrumento negociable como:

---

[66] *VS PR, LLC v. Drift-Wind*, 207 DPR 253, 261 (2021); *Sucn. Padrón v. Cayo Norte*, 161 DPR 761, 766 (2004).
[67] *General Electric v. Concessionaries, Inc.*, 118 DPR 32, 43 (1986).
[68] *Ramos y otros v. Colón y otros*, 153 DPR 534, 546 (2001); *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, 133 DPR 881, 900 (1993).
[69] *Ramos y otros v. Colón y otros, supra,* citando a M.A. Del Arco Torres y M. Pons González, *Diccionario de Derecho Civil*, Navarra, Ed. Aranzadi, 1984, T. II, pág. 168; *Freeman v. Tribunal Superior*, 92 DPR 1, 25 (1965).
[70] *RMCA v. Mayol Bianchi*, 208 DPR 100, 108 (2021) citando a *Guadalupe v. Rodríguez*, 70 DPR 958, 966 (1950).
[71] Ley Núm. 208 de 17 de agosto de 1995, según enmendada, 19 LPRA § 401 *et seq.*

(a) [...] una promesa o una orden incondicional de pago de una cantidad específica de dinero, con o sin intereses u otros cargos descritos en la promesa u orden, si el mismo:
  (1) es pagadero al portador o a la orden al momento de su emisión o cuando primero adviene a la posesión de un tenedor;
  (2) es pagadero a la presentación o en una fecha específica; y
  (3) no especifica otro compromiso o instrucción por parte de la persona que promete u ordena el pago que no sea el pago del dinero, pero la promesa u orden puede contener (i) un compromiso o poder para dar, mantener o proteger colateral para garantizar el pago, (ii) una autorización o poder al tenedor para admitir sentencia o liquidar la colateral o disponer de ella de otra forma, o (iii) una renuncia al beneficio de cualquier ley que exista concediéndole una ventaja o protección a un deudor.[72]

De otro lado, es harto conocido que los instrumentos negociables, como lo es un pagaré, pueden adquirirse y transmitirse por todos los medios permitidos en derecho. Al respecto, la *Ley de Transacciones Comerciales, supra*, dispone de dos (2) maneras para transmitir un instrumento negociable, a saber, la negociación y la cesión. Por un lado, la referida ley prescribe que la negociación implica la cesión, voluntaria o involuntaria, de la posesión de un instrumento, llevada a cabo por una persona que no es el emisor del instrumento "a una persona que con ello se convierta en su tenedor."[73] Añade, además, que "si un instrumento es pagadero a una persona identificada, la negociación requiere la cesión de la posesión del instrumento y su endoso por el tenedor."[74] Por el contrario, si el instrumento es pagadero al portador, "el mismo puede negociarse mediante la cesión de la posesión únicamente."[75]

Por otra parte, la cesión ocurre cuando una persona que no haya emitido el mismo, le entrega a otra el instrumento, con el propósito de darle a esta última el derecho a exigir el cumplimiento del mismo.[76] Consiguientemente, el cesionario adquiere cualquier derecho que tuviese el

---

[72] 19 LPRA sec. 504; Véase, además, *FirstBank v. Registradora*, 208 DPR 64, 90 (2021).
[73] 19 LPRA sec. 551.
[74] *Íd.*
[75] *Íd.*
[76] 19 LPRA sec. 553(a).

cedente de exigir el cumplimiento del instrumento, incluyendo aquellos que tuviese como tenedor de buena fe.[77]

Es preciso señalar que, una persona con derecho a exigir el cumplimiento de un instrumento es definida de la siguiente manera:

> (i) el tenedor del instrumento, (ii) una persona que no es tenedor pero está en posesión del instrumento y tiene los derechos de un tenedor, o (iii) una persona que no está en posesión del instrumento pero tiene derecho de exigir el cumplimiento del instrumento de acuerdo con las disposiciones de la Sección 2-309 y de la Sección 2-418(d). Una persona puede ser una persona con derecho a exigir el cumplimiento del instrumento aunque la persona no sea el dueño del instrumento o lo posea indebidamente.[78]

## - III –

Como cuestión de umbral, precisa señalar que, a tenor con la normativa atinente a la revisión de sentencia sumaria, y luego de evaluar concienzudamente los respectivos escritos presentados, hallamos que la *Oposición a la Solicitud de Sentencia Sumaria* presentada por los señores VALDESUSO-GARCÍA no cumple con los requisitos de forma estatuidos en la Regla 36 de las de Procedimiento Civil de 2009, *supra*. Esto es, aun cuando los señores VALDESUSO-GARCÍA incluyeron una relación en párrafos enumerados de los hechos esenciales que consideraban incontrovertidos, en ninguno de ellos hicieron referencia a los párrafos o las páginas de las declaraciones juradas o cualquier otra prueba admisible en evidencia que estableciera tales hechos, tal y como lo exige la Regla 36.3 de las de Procedimiento Civil de 2009, *supra*. Contrario a ello, los señores VALDESUSO-GARCÍA se limitaron a argumentar que el pagaré había sido alterado y **Condado 3** no había comprobado tener legitimación activa. Ello, sin embargo, no dispone sin más de la controversia ante nuestra consideración. Veamos.

En su **primer error**, los señores VALDESUSO-GARCÍA alegan que el foro primario actuó sin jurisdicción al emitir la *Sentencia* apelada, toda vez que

---

[77] 19 LPRA sec. 553(b).
[78] 19 LPRA sec. 601.

**Condado 3** no prestó la fianza de no residente, de conformidad a la Regla 69.5 de las de Procedimiento Civil de 2009, *supra*. No tienen razón. En consonancia con lo que precisáramos, la antedicha regla dispone que cuando la parte reclamante sea una corporación extranjera, el tribunal deberá requerirle una fianza no menor de $1,000.00, "para garantizar las cosas, los gastos y los honorarios de abogados a que pueda ser condenada."[79] Es cierto que, **Condado 3** es una compañía extranjera, específicamente organizada bajo las leyes de Delaware y con oficina designada en Minnesota.[80] Asimismo, revela el expediente que indudablemente el pagaré objeto de la presente controversia fue adquirido por endoso por LUNA COMMERCIAL, y así fue notificado ante el foro de instancia, quien en atención a ello, declaró *ha lugar* la sustitución de parte presentada por **Condado 3**.[81] Junto con la solicitud de sustitución de parte, fue anejado él pagaré endosado a favor de LUNA COMMERCIAL, así como un *certificado de organización* emitido el 1 de marzo de 2021 por el Departamento de Estado, en el cual se certifica que es una compañía organizada bajo las leyes de Puerto Rico.[82] Toda vez de que LUNA COMMERCIAL es la actual tenedora del pagaré, y la misma está organizada bajo las leyes de Puerto Rico, no se requiere la fianza de no residente. En consecuencia, el primer error no se cometió.

En su **segundo error**, los señores VALDESUSO-GARCÍA exponen que existen hechos en controversia, por lo que no podía dictarse la *Sentencia* apelada. En específico, señalan cuatro (4) asuntos, a saber: (1) la aceleración del vencimiento de la deuda; (2) discrepancia en las cuantías reclamadas; (3) insuficiencia en la declaración jurada presentada junto a la solicitud de sentencia sumaria y, (4) alteraciones en el pagaré. Tras un examen ponderado de los documentos del expediente, pudimos constatar que los señores VALDESUSO-GARCÍA no presentaron prueba alguna controvirtiendo los

---

[79] Regla 69.5 de las de Procedimiento Civil de 2009, *supra*.
[80] Véase Apéndice de la *Apelación*, pág. 11.
[81] Apéndice de la *Oposición a Escrito de Apelación*, págs. 36-44.
[82] *Íd.*, pág. 43.

hechos alegados en la *Solicitud de Sentencia Sumaria Parcial*. En consecuencia, los mismos se dan por admitidos. Debido a ello, y tras un examen minucioso del expediente, razonamos que no existen hechos materiales en controversia. La única controversia de derecho pendiente era sí procedía el cobro de dinero del préstamo y, consecuentemente, la ejecución de la hipoteca que garantiza dicha obligación. Así pues, es nuestro deber revisar si el foro de instancia aplicó correctamente el Derecho al asunto que aquí nos ocupa. Resolvemos en la afirmativa.

El expediente corrobora que: (1) el 28 de noviembre de 2003, los señores **VALDESUSO-GARCÍA** obtuvieron un préstamo del antiguo Doral Bank;[83] (2) en la misma fecha, y para garantizar dicho préstamo, los señores **VALDESUSO-GARCÍA** otorgaron el Pagaré por la suma de $487,500.00;[84] (3) dicho Pagaré fue adquirido mediante endoso por BPPR;[85] (4) al momento de instar la *Demanda*, la deuda ascendía a $202,373.44 de principal, con intereses de $45,986.55 vencidos al 30 de septiembre de 2015, más $3,792.71 por cargos por demora, cuenta de reserva y otros, y, $48,750.00 por concepto de costas, gastos y honorarios de abogado, para un total de $302,902.70;[86] (5) durante el trámite del presente pleito, el BBPR cedió a **Condado 3**, con todos sus intereses y derechos como acreedor, el préstamo concedido a los señores **VALDESUSO-GARCÍA**;[87] (6) posteriormente, el pagaré fue cedido a **LUNA COMMERCIAL**;[88] (7) **LUNA COMMERCIAL** es la poseedora de buena fe del pagaré y así lo hizo constar ante el tribunal;[89] y (8) los señores **VALDESUSO-GARCÍA** incumplieron con su obligación de realizar los pagos mensuales adeudados.[90]

En definitiva, colegimos que el foro primario no erró ni abusó de su discreción al declarar *ha lugar* la *Solicitud de Sentencia Sumaria Parcial*

---

[83] Apéndice de la *Apelación*, págs. 2 y 7.
[84] *Íd*.
[85] *Íd*., pág. 15.
[86] *Íd*., pág. 3.
[87] *Íd*., pág. 11-16.
[88] Apéndice de la *Oposición a Escrito de Apelación*, pág. 42.
[89] *Íd*., págs. 36-43.
[90] Tal hecho no fue controvertido por los señores **VALDESUSO-GARCÍA** en su *Oposición a Solicitud de Sentencia Sumaria*.

presentada por **Condado 3**, toda vez que su determinación es esencialmente correcta y encontró fundamento en los documentos que obran en el expediente judicial.

En último lugar, en su **tercer error**, los señores VALDESUSO-GARCÍA alegan que el tribunal de instancia incidió al no permitir que se llevara a cabo el descubrimiento de prueba. Sostienen que al momento en que se dictó la *Sentencia*, quedaba pendiente la contestación de un interrogatorio cursado a LUNA COMMERCIAL. Precisamos que este foro intermedio reconoce la amplia discreción que goza el foro primario sobre las cuestiones relativas al descubrimiento de prueba. Más, debemos señalar que, de una evaluación del *Primer Pliego de Interrogatorios y Requerimiento de Producción de Documentos*, observamos que las preguntas de los señores VALDESUSO-GARCÍA iban dirigidas a ejercer el retracto del crédito litigioso.[91] Ello contrario a la controversia pendiente que era resolver si procedía la acción de cobro de dinero y ejecución de hipoteca. Así pues, es la apreciación de este foro que el interrogatorio cursado por los señores VALDESUSO-GARCÍA es inconsecuente a la determinación del foro primario de declarar *ha lugar* la solicitud de sentencia sumaria. Además, es menester reseñar que la controversia sobre si aplicaba o no el crédito litigioso fue resuelta el 23 de noviembre de 2016 mediante *Resolución*.[92] Inclusive, en su *Sentencia*, el foro primario evocó a los señores VALDESUSO-GARCÍA que el asunto ya había sido dilucidado por la antedicha *Resolución*, y subrayó que los mismos no tenían derecho a invocar la figura del retracto de crédito litigioso.[93] Aún más, en su oposición a la solicitud de sentencia sumaria, los señores VALDESUSO-GARCÍA reconocieron que ya el foro apelado se había expresado sobre el asunto.[94] En conclusión, no se cometió el tercer error.

---

[91] Apéndice de la *Oposición a Escrito de Apelación*, págs. 72-74.
[92] *Íd*., págs. 22- 27.
[93] Véase Apéndice de la *Apelación*, pág. 94. El dictamen fue notificado y archivado en autos el 29 de noviembre de 2016.
[94] *Íd*., pág. 70.

## - IV –

Por los fundamentos expuestos, ***confirmamos*** la *Sentencia* dictaminada el 6 de diciembre de 2022 por el Tribunal de Primera Instancia, Sala Superior de San Juan.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones
